UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D'ANGELO SMITH, | |
| Plaintiff, | No. 17 C 5029 |
| v. | Judge Thomas M. Durkin |
| WARDEN DAVID GOMEZ, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff D'Angelo Smith brings this action against Warden David Gomez for deliberate indifference to his serious medical needs and intentional infliction of emotional distress. Gomez filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for Smith's failure to state a claim and failure to exhaust his administrative remedies. For the following reasons, Gomez's motion is granted in part and denied in part.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard applied to motions under Rule 12(c) is the same standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Civ. P. 8(a)(2). Through this statement, defendants must be provided

1

with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Plaintiff D'Angelo Smith is a former inmate of the Illinois Department of Corrections who suffers from Type-1 diabetes. R. 22 ¶¶ 2, 10. The physical effects of Smith's diabetes include severe neuropathy in his arms and legs, constant sleep, delirious episodes, sporadic unconsciousness, and temporary blindness. *Id.* ¶ 2. While incarcerated at the Sheridan Correctional Center, Smith received correct dosages of insulin to manage his condition. *Id.* ¶ 3. However, Smith's physician at Sheridan also told Smith he needed a suitable diet to control his blood sugar levels and avoid the other physical effects of his diabetes. *Id.* Smith alleges the food in Sheridan's cafeteria was insufficient to meet his dietary needs. *Id.* ¶ 4. In October 2016, a Sheridan nurse wrote Smith a special order to shop at the "[c]ommisary as needed (due to) [his] severe medical condition." *Id.* Despite this medical order, Smith was not permitted to

2

purchase food from the commissary. *Id.* ¶ 5. Smith made numerous oral and written complaints to Sheridan personnel, including to Warden David Gomez, but his requests were ignored. *Id.* ¶¶ 6-7. Smith spoke directly with Gomez about his condition, at which time Gomez indicated he would look into the problem, but nothing was done. *Id.* ¶ 8. Because he was denied access to the commissary, Smith suffered from dangerously low blood sugar levels, physical pain, loss of consciousness, numbness, deliriousness, temporary blindness, helplessness, and hopelessness. *Id.* ¶ 9.

Smith eventually was transferred to Shawnee Correctional Center, where he was placed in a medical unit and provided with food to avoid the physical complications of his condition. *Id.* ¶ 10.[1] On April 18, 2017, while still incarcerated at Shawnee, Smith filed a grievance with the IDOC Administrative Review Board about being denied access to the Sheridan commissary. *Id.* ¶ 11. One week later, the Board denied Smith's grievance. *Id.* It is unclear whether Smith filed any earlier grievances related to this issue. Smith was released from Shawnee in late 2017. *Id.* ¶ 10.

Smith brings this action against Warden Gomez for deliberate indifference to his serious medical needs and for intentional infliction of emotional distress (IIED). Gomez now moves for judgment on the pleadings, contending that Smith failed to exhaust his administrative remedies and failed to state a claim for either deliberate indifference or IIED.

**Analysis**

---

[1] The complaint does not specify the date on which Smith was transferred.

## I. Exhaustion of Administrative Remedies

The Court must resolve whether Smith exhausted his administrative remedies before considering the merits of his claims for deliberate indifference and IIED. *See Perez v. Wisconsin Dep't. of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999). Under the Prison Litigation Reform Act (PLRA), prisoners must exhaust all administrative remedies before bringing a civil action in federal court based on prisoner conditions. 42 U.S.C. § 1997e(a). Prior to filing a complaint in district court, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). Exhaustion is an affirmative defense and the burden of proof is on the defendant. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). When a valid affirmative defense "is so plain from the face of the complaint that the suit can be regarded as frivolous," the prisoner's complaint may be dismissed. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

The Illinois Department of Corrections has a three-step grievance procedure. *See* Ill. Admin. Code tit. 20, § 504.800 et seq. (detailing grievance procedure). The procedures were amended on April 1, 2017. Before April 1, 2017, the prisoner first had to attempt to informally resolve the grievance with a counselor. *Id.* § 504.810 (2016). Then, if the issue remained unresolved, the prisoner was required to file a written grievance with a grievance officer. *Id.* Finally, the prisoner could appeal an

unfavorable decision to the Administrative Review Board. *Id.* § 504.850. The post-April 1, 2017 version of the grievance procedure is similar, except that prisoners now begin the process with a written grievance and are not required to first attempt an informal resolution. *See* § 504.810(a). Alternatively, a prisoner is directed to file his grievance directly with the Administrative Review Board if the issue pertains "to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." § 504.870.[2] Only after taking these steps may a prisoner file a complaint in federal court.

Gomez argues that Smith did not allege that he availed himself of the grievance process at Sheridan. But that is not Smith's burden. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, Gomez bears the burden to demonstrate Smith's failure to exhaust administrative remedies. In support of his motion, Gomez did not submit the grievance procedure for offenders, Smith's IDOC file, Smith's IDOC grievances, or any other documentation that would allow the Court to determine what steps, if any, Smith took prior to commencing this action.[3]

Relatedly, Gomez contends his motion should be granted because Smith alleges he filed only one grievance directly to the Administrative Review Board, thus not

---

[2] Prior to April 1, 2017, Section 504.870 did not include an exception for medical issues. As the Court discusses below, it is unclear from the complaint whether Smith filed any earlier grievances about being denied access to the Sheridan commissary before filing a grievance with the Administrative Review Board. If, however, Smith filed his first grievance about this issue directly with the Administrative Review Board, the April 1, 2017 amendment would apply since Smith did not file his grievance until April 18, 2017.

[3] Had Gomez submitted these materials, his motion would be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

following IDOC's grievance protocol. Although Smith only attached one grievance to the complaint, the complaint does not allege he only filed one grievance. Rather, Smith alleges he made numerous oral and written complaints to Sheridan personnel. Drawing all reasonable inferences in Smith's favor, it is possible that these complaints included written grievances and Smith only attached his final appeal. Even if Smith did not file any earlier grievances, it is Gomez's burden to establish that an administrative remedy was available to Smith at Sheridan. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [plaintiff] failed to pursue it."). Gomez has offered nothing to meet this burden. It is therefore not "so plain" from the complaint that Smith failed to exhaust his administrative remedies that the Court can grant Gomez's motion for judgment on the pleadings.[4] *See Thomas v. Kalu*, 218 F. App'x 509, 512 (7th Cir. 2007) ("Because [plaintiff] could later establish facts, consistent with his pleadings, that show he exhausted administrative remedies, his claims should not have been dismissed.").

Nevertheless, Gomez has raised a legitimate question about whether Smith exhausted his administrative remedies prior to filing this action. The Seventh Circuit instructs that when a party contests exhaustion the district court should conduct an evidentiary hearing on the issue:

> The sequence to be followed in a cause in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he

---

[4] Nor, as Gomez contends in his reply brief, does Smith's response to the motion clearly establish that he failed to exhaust his administrative remedies.

6

deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Consistent with *Pavey*, this Court will allow the parties to conduct limited discovery related to exhaustion before proceeding to pretrial discovery. *See also White v. Bukowski*, 800 F.3d 392, 394 (7th Cir. 2015) ("Our opinion in [*Pavey*] encourages district courts to determine, before scheduling discovery relating to the merits of a prisoner's civil rights suit, whether administrative remedies have been exhausted."). As such, Gomez's motion for judgment on the pleadings for failure to exhaust is denied. However, the Court will permit the parties an opportunity for limited discovery and a *Pavey* hearing if one is required to resolve whether Smith exhausted his administrative remedies.

## II. Deliberate Indifference

Having addressed the issue of exhaustion, the Court now turns to Gomez's motion for judgment on the pleadings for Smith's failure to state a claim for deliberate indifference to his serious medical needs.

7

a) Individual Capacity (Count II)

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). To state a claim for deliberate indifference based on failure to provide adequate medical treatment, Smith must allege facts that show he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Gomez does not contest that Smith's diabetes is a serious medical condition. Rather, he argues that Smith failed to allege that he was deliberately indifferent for purposes of the second element.

Deliberate indifference requires the plaintiff to show that a defendant acted or failed to act "despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Prison officials may exhibit deliberate indifference to a known serious medical condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). While a nonmedical professional is typically justified in believing a prisoner is in capable hands, "nonmedical officials can 'be chargeable with . . . deliberate indifference' where they have 'a reason to

8

believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Hayes*, 546 F.3d at 525). In other words, a nonmedical defendant "cannot simply ignore an inmate's plight." *Id.*; *see Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate]."). Once an official is alerted to a risk, the "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Arnett*, 658 F.3d at 756 (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

Smith has alleged a plausible claim of deliberate indifference against Gomez. Smith alleges that he made both oral and written complaints about the situation to Gomez, including having a conversation with Gomez during which Gomez said he would investigate the problem but failed to follow up. These allegations are sufficient at the pleading stage to state a claim for deliberate indifference. *See Greeno*, 414 F.3d at 656 (7th Cir. 2005) (while affirming dismissal of deliberate indifference claim against certain defendants, stating that "[p]erhaps it would be a different matter if [the nonmedical defendant] had ignored [plaintiff's] complaints entirely . . . ."). Gomez's motion with respect to Count II of Smith's first amended complaint is denied.

b) Official Capacity (Count I)

Gomez also moves for judgment on the pleadings on Smith's claim of deliberate indifference against him in his official capacity. Official capacity claims against state officials are actions against the governmental entity of which the official is a part.

9

*Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (citation omitted). "Section 1983 does not authorize suits against states." *Id.* (quoting *Powers v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000)). Smith is not requesting injunctive relief, R. 52 at 2, and "official capacity claims seeking money damages . . . may not be sustained under § 1983." *Id.* Thus, Gomez's motion for judgment on the pleadings with respect to Count I of Smith's first amended complaint is granted.

## III. Intentional Infliction of Emotional Distress (Count III)

A claim for intentional infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct by the defendant, (2) either intent to cause distress or knowledge that there was a high probability that the defendant's conduct would cause severe emotional distress, and (3) severe emotion distress that actually resulted." *Dixon v. County of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (citations omitted). The requirement of "extreme and outrageous" conduct is demanding, "and it will not be met in every instance where a plaintiff has stated a claim under the Eighth Amendment (which itself is a high bar)." *Id.* Here, Smith alleges that Gomez either intended to cause him severe emotional distress, or knew there was a high probability such emotional distress would result from his deliberate indifference. Although finding extreme and outrageous conduct is a demanding standard, district courts in the Seventh Circuit have found that allegations supporting a deliberate indifference claim are sufficient to also support an Illinois state law claim for IIED. *Rice v. Wexford Health Services, Inc.*, 2016 WL 8711490, at *6 (N.D. Ill. Jan. 29, 2016); *see also Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014) (finding that

evidence creating an issue of fact on plaintiff's deliberate indifference claim also supports denial of motion for summary judgment on IIED claim); *Doe ex. rel Doe v. White*, 627 F. Supp. 2d 905, 921 (C.D. Ill. 2009) (holding that plaintiffs' allegations of deliberate indifference to pleas for protection were sufficient to support a claim for IIED under federal notice pleadings); *Piercy v. Whiteside County, Illinois*, 2016 WL 1719802, at *8 (N.D. Ill. Apr. 29, 2016) (finding the allegations supporting the plaintiff's deliberate indifference claim were sufficient to also support his IIED claim). As such, the Court denies Gomez's motion for judgment on the pleadings for Smith's claim of IIED (Count III).

## Conclusion

For the reasons stated above, Gomez's motion for judgment on the pleadings is granted as to Count I of Smith's first amended complaint and denied as to Counts II and III. To resolve whether Smith exhausted his administrative remedies, the Court will permit limited discovery relating to exhaustion before allowing the parties to conduct discovery on the merits of Smith's claims.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 29, 2019